■ In the Matter of Brad I., a Child Alleged to be Neglected. Broome County Department of Social Services, Respondent; Brad J., Appellant, et al., Respondent. [985 NYS2d 758]—

Egan Jr., J. Appeal from an order of the Family Court of Broome County (Connerton, J.), entered October 29, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

Respondent Tiana K. (hereinafter the mother) and respondent Brad J. (hereinafter the father) are the parents of three children—Dominick J. (born in 2009), Emotions J. (born in 2010) and Brad I. (born in 2011), the latter of whom is the subject of this proceeding. The record reflects that Dominick was removed from the mother's care in September 2010, and Emotions was placed in foster care shortly after her birth. None of the children ever resided with the father. In October 2010, petitioner commenced a neglect proceeding against the mother with respect to Dominick and, in December 2010, commenced a similar proceeding against the mother with respect to Emotions. The mother thereafter made certain admissions and, by order entered September 1, 2011, Family Court (Pines, J.) adjudicated Dominick and Emotions to be neglected children and continued their placement with petitioner.

In the interim, in or about January 2011, the mother stopped by the father's residence to borrow some money. According to the father, when he went upstairs to retrieve the requested

funds, Dominick, who apparently was visiting for the evening, was crying in his playpen.[1] The father picked up Dominick and came back downstairs, whereupon he encountered an armed assailant, who also was demanding money. The assailant shot the father—while the father was holding Dominick in his arms—and fled the scene. Although the mother and the father apparently were the subject of an indicated report for inadequate guardianship based upon this incident, it does not appear that petitioner commenced a neglect proceeding against either parent with respect to Dominick as a result thereof. Approximately one month later, a search warrant was executed for the father's residence[2] and, according to a local narcotics detective, the father admitted to using cocaine and marihuana and to selling "small amounts of both" to support his habit.[3]

Following these events, the mother became pregnant with Brad. Shortly after his birth, the child entered foster care and petitioner commenced the instant proceeding against the mother and the father, alleging that they derivatively neglected Brad based upon—in large measure—their conduct with respect to Dominick in the context of the home invasion incident. Following a fact-finding hearing, Family Court (Connerton, J.) adjudicated Brad to be a neglected child and, after a dispositional hearing, placed the father under petitioner's supervision.[4] This appeal by the father ensued.[5]

Pursuant to Family Ct Act § 1046 (a) (i), "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of . . . the respondent." However, "[e]vidence of neglect of one child typically may not serve as the sole basis for a finding of neglect [of another child, unless] the nature of the direct [neglect], notably its duration [and] the circumstances surrounding its commission[,] . . . evidence[s] fundamental flaws in the respondent's under-

---

**1.** The record suggests that the mother and the father had been advised by petitioner that they should not be together around Dominick—purportedly due to domestic violence issues. However, to the extent that such suggestion was reduced to a court order, that order does not appear in the record on appeal.

**2.** None of the children were present at the time of the search.

**3.** The bulk of counsel's objections to the testimony regarding the specific items seized during the search were sustained, but the father did admit that he had "several juvenile mari[h]uana plants in [his] home" at that time.

**4.** Although the fact-finding order lists both the mother and the father as named respondents, the mother apparently consented to the child's placement with petitioner pending her completion of services. Hence, the dispositional order pertains only to the father.

**5.** The attorney for the child supports the father's argument that there is insufficient evidence to sustain the underlying finding of neglect.

standing of the duties of parenthood" (*Matter of Benjamin VV. [Larry VV.]*, 92 AD3d 1107, 1109 [2012] [internal quotation marks and citations omitted]; *see Matter of Xiomara D. [Madelyn D.]*, 96 AD3d 1239, 1240 [2012]; *Matter of Michael N. [Jason M.]*, 79 AD3d 1165, 1167 [2010]; *Matter of Landon W.*, 35 AD3d 1139, 1141 [2006])—flaws that are "so profound as to place any child in his or her care at substantial risk of harm" (*Matter of Joanne II. [Thomas II.]*, 100 AD3d 1204, 1205 [2012]; *accord Matter of Kayden E. [Luis E.]*, 111 AD3d 1094, 1096 [2013], *lv denied* 22 NY3d 862 [2014]). Contrary to the father's assertion, petitioner's failure to commence a direct neglect proceeding against him with respect to Dominick does not bar petitioner from maintaining this derivative neglect proceeding against him with respect to Brad. Similarly, the fact that Brad had yet to even be conceived—much less born—at the time of the home invasion or the search of the father's residence is not dispositive, as the relevant inquiry is whether the evidence of the direct neglect of one child, i.e., Dominick, "is so proximate in time to the derivative proceeding that it can reasonably be concluded that the condition still exists" (*Matter of Jamarra S. [Jessica S.]*, 85 AD3d 803, 804 [2011] [internal quotation marks and citation omitted]; *see Matter of Darren HH. [Amber HH.]*, 68 AD3d 1197, 1197-1198 [2009], *lv denied* 14 NY3d 703 [2010]; *Matter of Evelyn B.*, 30 AD3d 913, 914-915 [2006], *lv denied* 7 NY3d 713 [2006]). That said, our review of the record fails to disclose sufficient proof to support a finding that the father neglected Dominick in the first instance and, therefore, the finding of derivative neglect as to Brad necessarily cannot stand (*see Matter of Andre G.*, 64 AD3d 913, 914-915 [2009]).

Family Court predicated its finding of derivative neglect as to Brad upon what it deemed to be the father's demonstrated "lack of judgment with [respect to] Dominick"—citing the father's decision to admit the mother to his residence while Dominick was present, the father's admitted drug use/alleged sales, his corresponding failure to "voluntarily involve himself in services to address his deficits as a parent" and his conduct during the January 2011 home invasion. Even assuming that the father had been ordered to have no contact with the mother while Dominick was in his care (*see* note 1, *supra*), the violation of any such order—standing alone—would not be sufficient to sustain a finding of neglect (*cf. Matter of Jada K.E. [Richard D.E.]*, 96 AD3d 744, 745 [2012]; *Matter of Andre G.*, 64 AD3d at 915). Additionally, although the father admittedly smoked marihuana on what could be regarded as a regular basis, the record is bereft of any evidence that the father used (or sold) drugs while Dominick (or any other child) was in his care, nor

is there sufficient evidence to support a finding that his conduct in this regard posed an imminent risk of injury or impairment (*see* Family Ct Act § 1012 [f] [i]) to Dominick (or to any of his children) (*compare Matter of Alyssa WW. [Clifton WW.]*, 106 AD3d 1157, 1158 [2013]).[6] As for the father's asserted (and unidentified) parenting deficits, there is no indication that the father failed to comply with or avail himself of any court-ordered services (*compare Matter of Harmony S.*, 22 AD3d 972, 973 [2005]).

Finally, with respect to the home invasion incident, although we agree that using one's child as a human shield to ward off an armed intruder indeed would constitute a fundamental misunderstanding of the duties of parenthood, the record does not support Family Court's findings that the father "grabbed" Dominick before "return[ing] to face the gunman" or that the father picked up Dominick "believing that a third person wouldn't shoot him if he was holding a child." Even disregarding the father's testimony as to the sequence of events leading up to the shooting, the testimony of petitioner's caseworkers—at best—establishes that the father picked up Dominick, who apparently was upset and crying, at some unspecified point while the intruder was present in the home.[7] Such testimony, in our view, falls far short of establishing that the father—in total disregard of both his parental responsibilities and his child's safety—used Dominick in an attempt to dissuade or repel the armed intruder. Absent evidence that the father neglected Dominick by engaging in conduct that posed an imminent threat to his welfare, there can be no finding of derivative neglect as to Brad (*see Matter of Andre G.*, 64 AD3d at 914-915; *Matter of Desmond LL.*, 61 AD3d 1309, 1309-1310 [2009]; *compare Matter of Brandon T. [Guillaume T.]*, 114 AD3d 950, 950-951 [2014]; *Matter of Xiomara D. [Madelyn D.]*, 96 AD3d at 1240-1241; *Matter*

---

**6.** Indeed, petitioner acknowledged at the dispositional hearing that it did not "know what the impact of [the father's] smoking [was] upon the children" and conceded that it had "no direct evidence" that the father's use of marihuana "had negatively impacted his care of [any of] the children."

**7.** As recounted by one of petitioner's caseworkers, "[The father] said that he had told [the mother] to wait for a minute while he went upstairs to get whatever she was asking for, . . . and that when he came downstairs there was a male in his apartment and the male became upset with him. I believe [the intruder] demanded money and Dominick was upset so [the father] picked up Dominick and [the father] was shot in the arm." Similarly, another of petitioner's caseworkers testified, "[The father] told me that he was at his apartment, someone knocked on the door, [the mother] opened the door, and the gentleman came in and, I guess, it was an alleged robbery, is how he described it. He said he didn't have any money. He picked up his son and the gentleman shot him in his arm."

*of Darren HH. [Amber HH.],* 68 AD3d at 1198). Accordingly, Family Court's order is reversed.

McCarthy and Garry, JJ., concur.

Lahtinen, J.P. (dissenting). Inasmuch as a sound and substantial basis in the record supports Family Court's finding of derivative neglect, I respectfully dissent. A parent who "misus[es] a drug or drugs" may be found to have neglected his or her children (Family Ct Act § 1012 [f] [i] [B]) and, unsurprisingly, placing one's "children in near proximity to accessible narcotics and to the very dangerous activity of narcotics trafficking . . . pose[s] an imminent danger to the children's physical, mental, and emotional well-being" (*Matter of Paul J.,* 6 AD3d 709, 710 [2004]; *see Matter of Brandon R. [James U.],* 114 AD3d 1028, 1028 [2014]; *Matter of Jared M. [Ernesto C.],* 99 AD3d 474, 475 [2012]). Family Court credited evidence that respondent Brad J. (hereinafter the father) regularly used and sold marihuana and cocaine, and he admittedly cultivated marihuana at his residence.

The majority finds this evidence to be insufficient to support a finding of neglect because "the record is bereft of any evidence that the father used (or sold) drugs while Dominick (or any other child) was in his care, nor is there sufficient evidence to support a finding that his conduct in this regard posed an imminent risk of injury or impairment" to his children. When police raided the father's residence shortly after the shooting, however, they discovered a bedroom with furnishings, clothing and toys. Given this proof of a child's regular presence, the father's regular use and sale of drugs could readily be construed as placing his children in imminent danger of impairment such as to support a finding of neglect (*see Matter of Brandon R. [James U.],* 114 AD3d at 1028-1029; *Matter of Lavountae A.,* 57 AD3d 1382, 1382-1383 [2008], *affd* 12 NY3d 832 [2009]). In my view, Family Court could further determine from this evidence that the father's actions exhibited "such an impaired level of parental judgment as to create a substantial risk of harm to any child under [his] care" that would warrant a finding of derivative neglect (*Matter of Andrew DeJ. R.,* 30 AD3d 238, 239 [2006]; *see Matter of Eugene L. [Julianna H.],* 83 AD3d 490, 490 [2011]).

Ordered that the order is reversed, on the law, without costs, and petition dismissed.